STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-09-138
UON -YOR- 2/26/2013

BAC HOME LOANS SERVICING,        )
L.P. F/K/A/ COUNTRYWIDE HOME     )
LOANS SERVICING, L.P.,           )
                                 )
          Plaintiff,             )
                                 )          ORDER
     v.                          )
                                 )
SHANNON R. BAKER,                )
                                 )
          Defendant.             )
                                 )

I.     Background

Defendant/Counterclaim-Plaintiff ("Counterclaim-Plaintiff") currently faces

foreclosure proceedings brought by Plaintiff/Counterclaim-Defendant ("Counterclaim-

Defendant"). Counterclaim-Plaintiff executed a mortgage loan and note in favor of

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fieldstone

Mortgage Company, on December 29, 2005. (Clark Aff. At Ex. B). After Counterclaim-

Plaintiff's first mortgage payment, Fieldstone Mortgage Company transferred the

servicing of the mortgage loan to Countrywide Loan Servicing. (Higgins Decl. at Ex. 6.)

Countrywide sent Counterclaim-Plaintiff a Notice of Assignment, Sale, or Transfer of

Servicing Rights on February 1, 2006 informing Counterclaim-Plaintiff that transfer was

effective as of March 1, 2006. Id. Counterclaim-Plaintiff made his first payment to

Countrywide on February 17, 2006 and continued to make mortgage payments to

Countrywide until January 2, 2009. (Higgins Decl. at Ex. 7). Counterclaim-Plaintiff

defaulted on the mortgage loan in February 2009. On February 9, 2009 Counterclaim-

1

Plaintiff's counsel, Mark Kearns, sent Countrywide a cease and desist letter. On March 2, 2009, Countrywide responded to Mark Kearns with a letter saying that Countrywide could not comply because Counterclaim-Plaintiff had not authorized third-party communication regarding his account. Countrywide was acquired by BAC Home Loans Servicing, L.P. and thereafter transferred the loan to Bank of America, N.A. BAC Home Loans Servicing, L.P. filed a Complaint for Foreclosure on September 29, 2009.

Counterclaim-Plaintiff has brought counterclaims of Violation of the Maine Consumer Credit Code, Violation of the Maine Fair Debt Collection Practices Act and Violation of the Fair Debt Collection Practices Act. Counterclaim-Defendant now moves the Court for Summary Judgment on those counterclaims.

II.     Standard

When a defendant or counterclaim defendant moves for Summary Judgment, "the plaintiff [or counterclaim plaintiff] must establish a prima facie case for each element of [the] cause of action that is properly challenged in the defendant's motion." Flaherty v. Muther, 2011 ME 32, ¶38, 171 A.3d 640, 652-653. The burden then shifts to the defendant to show that there is no genuine issue of material fact. Summary Judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Beal v. Allstate Ins. Co., 989 A. 2d 733, 738 (Me. 2010); Dyer v. Department of Transportation, 951 A.2d 821, 825 (Me. 2008). When reviewing a Motion for Summary Judgment, the Court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. Id.

2

A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. Reliance National Indemnity v. Knowles Industrial Services Corp., 2005 ME 29, ¶7, 868 A.2d 220, 224, citing Univ. of Me. Found. V. Fleet Bank of Me., 2003 ME 20, ¶20, 817 A.2d 871, 877. Furthermore, "a fact is material if it could potentially affect the outcome of the case." Id.

III.     Discussion

Counterclaim-Plaintiff brought counterclaims of Violation of the Maine Consumer Credit Code, Violation of the Maine Fair Debt Collection Practices Act and Violation of the Fair Debt Collection Practices Act.

Maine Consumer Credit Code

In Counterclaim-Plaintiff's initial counterclaim complaint, Counterclaim-Plaintiff pleads that Counterclaim-Defendant did not comply with the 9-A M.R.S § 3-203 and §9-306. The statute requires that a debtor be notified of the transfer of a debt. 9-A M.R.S § 3-203, 9-306 (2012). Furthermore, the debtor is obligated to pay only the original creditor until the he receives notification of the transfer. Id. Counterclaim-Plaintiff argues that he was not properly notified of the loan servicing transfer from Fieldstone Mortgage Company to Countrywide and therefore was not required to make payments to Counterclaim-Defendant. Counterclaim-Defendant has presented evidence that the default occurred after Counterclaim-Plaintiff was provided notice of that transfer in the form of notice at the top and bottom of a monthly mortgage statement on February 1, 2006. (Higgins Decl. at Ex. 7). Additionally, Counterclaim-Defendant argues that the fact that Counterclaim-Defendant had been making payments to Counterclaim-Defendant for

3

nearly three years after the transfer and before the default bars Counterclaim-Plaintiff from bringing this counterclaim.

The Court reads the February 1, 2006 notice of transfer as sufficient to fulfill the requirements of 9-A M.R.S § 3-203. According to the statute, the notice must "clearly and conspicuously identify the rights assigned" to the assignee. Id. The February 1, 2006 notice described Countrywide's assigned rights to be to "handle the servicing of your home loan, which means collecting your monthly home loan payments and handling related issues." The Court finds that this is a clear and detailed description of the assigned rights. Counterclaim-Plaintiff was properly notified of the transfer. Therefore there is no question of material fact. Counterclaim-Defendant is entitled to judgment as a matter of law on Counterclaim-Plaintiff's Maine Consumer Credit Code counterclaim.

Fair Debt Collection

Counterclaim-Plaintiff brought counterclaims of violations of the Maine Fair Debt Collection Practices Act and the United States Fair Debt Collection Act on the basis that Counterclaim-Defendant directly contacted Counterclaim-Plaintiff regarding the debt after Counterclaim-Plaintiff's attorney sent Counterclaim-Defendant a cease and desist letter. According to both the Maine and United States Fair Debt Collection Acts, a debt collector may not directly contact a debtor in connection with the collection of a debt where the debt collector knows an attorney represents the debtor and the debtor's attorney's contact information is readily available. 32 M.R.S. §11012(1)(B) (2012); 15 U.S.C. §1692(a)(2) (2006). Debt collector is defined in both statutes as excluding "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the

4

time it was obtained by such person." 32 M.R.S. §11003(7)(C) (2012); 15 U.S.C. § 1692a(6)(F)(iii) (2006). Counterclaim-Defendant contends that it is not in violation of the Maine or Federal Fair Debt Collection Act because it is the same entity as that which held the debt prior to default.

The Counterclaim-Defendant BAC Home Loans Servicing mailed Counterclaim-Plaintiff a letter notifying Counterclaim-Plaintiff of the transfer of the loan to parent company Bank of America N.A. effective July 1, 2011. (Higgins Decl. at Ex. 12). In that letter, Counterclaim-Defendant stated that Bank of America N.A. is considered a "debt collector" for purposes of certain state laws and the Federal Fair Debt Collection Practices Act. Id. Because Counterclaim-Defendant held itself out as a "debt collector" for purposes of the Fair Debt Collections Practices Act, the Court will look at Counterclaim-Plaintiff's counterclaims in that light.

Counterclaim-Plaintiff cites to three letters as debt collection actions in violations of the Maine and Federal Fair Debt Collections Acts. (Higgins Decl. at Ex. 13, 14, 15). Counterclaim-Plaintiff argues that the letters were sent directly to Counterclaim-Plaintiff after Counterclaim-Plaintiff's attorney had sent a cease and desist letter on February 9, 2009. According to statute, once Counterclaim-Defendant had notice that Counterclaim-Plaintiff was represented, Counterclaim-Defendant was required to contact Counterclaim-Plaintiff's attorney with respect to the collection of the debt, not Counterclaim-Defendant directly. 32 M.R.S. §11012(1)(B); 15 U.S.C. §1692(a)(2). The issues before the Court are whether the letters were sent after the date of the letter of transfer (July 1, 2011) and whether they were "in connection with the collection of any debt." Id.

5

Counterclaim-Plaintiff has not presented argument or evidence of a transfer of the loan servicing between the date of the transfer to Countrywide, which occurred before the default, and the transfer to Bank of America, N.A. occurring after the default. The Court looks at Bank of America, N.A. as the sole "debt collector" in this case under the terms of the Maine and Federal Fair Debt Collections Acts. Because Bank of America, N.A. is the only identified "debt collector" in this case for the purposes of analysis under the Maine and Federal Fair Debt Collections Acts, notices sent prior to the transfer of the loan servicing to Bank of America, N.A. are not applicable for purposes of Counterclaim-Plaintiff's Fair Debt Collection counterclaims. The first letter, a SCRA notice sent on February 12, 2009, was sent well before the transfer notice by Bank of America, N.A. The second letter received by Counterclaim-Plaintiff from Counterclaim-Defendant, concerning Fees Associated with Special Services and Loan Payoff, was sent on October 12, 2010. This letter was also sent prior to the transfer of loan servicing to Bank of America, N.A. Both of these letters are not considered for the purposes of Counterclaim-Plaintiff's counterclaim.

The final letter was sent March 17, 2012, after the notice of transfer to Bank of America, N.A. was headed with the disclaimer: "For Informational Purposes: This is not an attempt to collect a debt." (Higgins Decl. at Ex. 15). The substance of the letter is a disclosure of fees associated with loan services and loan payoff. The Court finds that this letter is not an attempt by Counterclaim-Defendant to collect the debt in question and therefore not a violation of either the Maine or Federal Fair Debt Collections Act.

IV.    Conclusion

6

Counterclaim-Defendant's Motion for Summary Judgment on Defendant's

Counterclaims is GRANTED.


DATED:   2/26/13                                    ⌒_◯
                                        _____
                                        John O'Neil, Jr.
                                        Justice, Superior Court

ATTORNEYS FOR PLAINTIFF:
RACHAEL PIERCE ESQ
SHECHTMAN HALPERIN SAVAGE LLP
1080 MAIN STREET
PAWTUCKET RI 02860

CHAD HIGGINS ESQ
GOODWIN PROCTER & HOAR LLP
53 STATE STREET
ONE EXCHANGE PLACE
BOSTON MA  02109

ATTORNEY FOR DEFENDANTS:
MARK A KEARNS ESQ
LAW OFFICE OF MARK KEARNS
PO BOX 17915
PORTLAND ME  04112

PARTY-IN-INTEREST PRO SE:
CITIBANK FEDERAL SAVINGS BANK
11800 SPECTRUM CENTER DRIVE
RESTON VA 22090

STATE OF MAINE                              SUPERIOR COURT
YORK, ss.                                   CIVIL ACTION
                                            DOCKET NO. RE-09-138
BAC HOME LOANS SERVICING,        )          JON-yor-9/16/2013
L.P. F/K/A/ COUNTRYWIDE HOME     )
LOANS SERVICING, L.P.,           )
                                 )
            Plaintiff,           )
                                 )          JUDGMENT
      v.                         )
                                 )
SHANNON R. BAKER,                )
                                 )
            Defendant.           )
                                 )

   I.     Background

      Defendant currently faces foreclosure proceedings brought by Plaintiff. Defendant

executed a mortgage loan and note in favor of Mortgage Electronic Registration Systems,

Inc. ("MERS"), as nominee for Fieldstone Mortgage Company, on December 29, 2005.

(Clark Aff. At Ex. B). After Defendant's first mortgage payment, Fieldstone Mortgage

Company transferred the servicing of the mortgage loan to Countrywide Loan Servicing.

(Higgins Decl. at Ex. 6.) Countrywide sent Defendant a Notice of Assignment, Sale, or

Transfer of Servicing Rights on February 1, 2006 informing Defendant that transfer was

effective as of March 1, 2006. Id. Defendant made his first payment to Countrywide on

February 17, 2006 and continued to make mortgage payments to Countrywide until

January 2, 2009. (Higgins Decl. at Ex. 7). Defendant defaulted on the mortgage loan in

February 2009. Plaintiff sent Defendant a notice to cure on March 24, 2009. A mortgage

assignment was executed in favor of Plaintiff on June 18, 2009. Plaintiff filed a

Complaint for Foreclosure on October 2, 2009. A bench trial was held on June 26, 2013.

   II.    Discussion

1

In order to succeed in a mortgage foreclosure action, the plaintiff must be able to show:

- "the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any,
- properly present proof of ownership of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage,
- a breach of condition in the mortgage note, including any reasonable attorney fees and court costs
- the order of priority and any amounts that may be due to other parties in interest, including any public utility easements,
- evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements,
- after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules, and
- if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act."

Chase Home Finance LLC v Higgins, 2009 ME 136, ¶ 11, 985 A.2d 508,

(citations omitted). A party seeking to foreclose must strictly comply with all statutory steps. Id. at ¶21.

Plaintiff has not shown that it strictly complied with the statutory requirements of a properly served notice of default and mortgagor's right to cure. For cases involving the foreclosure of an individual's primary residence, section 6111 requires that the mortgagee provide the mortgagor with notice of the mortgagor's right to cure prior to the acceleration of the loan and the commencement of a foreclosure action. 14 M.R.S. 6111 (2012). Plaintiff did provide Defendant with such a notice that included the statutorily required information on March 24, 2009. However, the mortgage was not assigned to Plaintiff until June 18, 2009. Therefore, Plaintiff was not the mortgagee at the time

2

Plaintiff sent the notice. The court finds that Plaintiff did not strictly comply with the requirements of Section 6111.

III.    Conclusion

Judgment is entered for Defendant.

DATE: 9/16/13

_____
John O'Neil, Jr.
Justice, Superior Court

3

ATTORNEYS FOR PLAINTIFF:
JEFFREY J HARDIMAN
RACHAEL K PIERCE
SHECHTMAN HALPERIN SAVAGE LLP
1080 MAIN STREET
PAWTUCKET RI  02860

ATTORNEY FOR DEFENDANT:
MARK A KEARNS
LAW OFFICE OF MARK KEARNS
PO BOX 17915
PORTLAND ME  04112